**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

----------------------------------------------------------- x

ICS INSPECTION AND CONTROL    :
SERVICES LIMITED,         :
                :
C/O Csc Cls (UK) Limited      :
5 Churchill Place, 10th Floor     :
London, UK E14 5HU,       :
       Petitioner,  :  Civil Action No. 26-cv-01093
                :
    - v. -        :
                :
THE ARGENTINE REPUBLIC,    :
                :
Procuración del Tesoro de la Nación  :
Posadas 1641          :
C1112ADC, Buenos Aires     :
Argentine Republic,       :
                :
      Respondent.  :

----------------------------------------------------------- x

**<u>PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD</u>**

## OVERVIEW

1.      Petitioner ICS Inspection and Control Services Limited ("ICS" or "Petitioner") hereby submits this petition to recognize and enforce a foreign arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), as statutorily enacted by Chapter 2 of the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 201, 207.

2.      Specifically, ICS seeks recognition and enforcement of a final, binding arbitration award (the "Award") in favor of ICS and against Respondent the Argentine Republic ("Argentina"), issued on April 29, 2024, by a duly constituted arbitral tribunal (the "Tribunal") seated in The Hague, The Netherlands.[1]  The Tribunal, proceeding under the Rules of the United Nations Commission on International Trade Law ("UNCITRAL"), unanimously held Argentina liable to pay damages for violating Article 2 of the bilateral investment treaty between the Government of the Republic of Argentina and the Government of the United Kingdom of Great Britain and Northern Ireland for the Promotion and Protection of Investments, dated December 11, 1990 (the "BIT").  Argentina's breach of the BIT arose from measures it took in relation to ICS's investment, including conduct concerning a March 11, 1998 agreement (the "Contract") between ICS and Argentina's Ministry of Economy and Public Finances, the *Ministerio de Economía y Finanzas Públicas de la República Argentina* (formerly *Ministerio de Economía y Obras y Servicios Públicos*) ("MECON").

---

[1]   The Award reflects a correction issued by the Tribunal on July 12, 2024, to rectify a minor computational error in the Award amount.

The Award was previously non-public, consistent with the Tribunal's first Procedural Order governing the arbitration.  However, because the Award has since been published, ICS has not moved for leave to file the Petition and Exhibits under seal.

3.      Attached hereto as Exhibits to the Declaration of Margaret E. Krawiec ("Krawiec Declaration") are true and correct copies of the Award (Exhibit A); the Tribunal's July 12, 2024 Correction of the Award (Exhibit B); the BIT (Exhibit C); the New York Convention (Exhibit D); the New York Convention's list of Contracting States (Exhibit E); and the UNCITRAL Arbitration Rules (as revised in 2010), which governed the Tribunal's proceedings (Exhibit F).

4.      Pursuant to Article III of the New York Convention and 9 U.S.C. § 207, ICS requests that this Court (i) enter an order recognizing and confirming the Award; and (ii) enter judgment for ICS and against Argentina in an amount equal to the full value of the Award.

## THE PARTIES

5.      ICS is a company incorporated, constituted, and registered under the laws of England and Wales.  It is a subsidiary of Agility Global PLC, a global investment company and multi-business operator headquartered in Abu Dhabi, United Arab Emirates; Agility Global PLC is listed on the Abu Dhabi Securities Exchange.

6.      The Argentine Republic (or "Argentina") is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA").  *See* 28 U.S.C. §§ 1330 and 1602–11.

## JURISDICTION AND VENUE

7.      In conformity with 9 U.S.C. § 202, the Award is an arbitral award arising from a commercial legal relationship (and an arbitration agreement contained in the BIT), which does not exclusively involve United States citizens.  Accordingly, the recognition and enforcement of the Award are governed by the New York Convention, a treaty in force in the United States for the

2

recognition and enforcement of international arbitration awards, as incorporated into Chapter 2 of the FAA. *See* 9 U.S.C. §§ 201–02.[2]

8.      This Court has subject matter jurisdiction over this proceeding because it constitutes a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity," *see* 28 U.S.C. § 1330(a), and it proceeds pursuant to 9 U.S.C. § 203 (actions under the Convention).

9.      Under the FSIA, Argentina does not enjoy sovereign immunity from the jurisdiction of this Court for two independent reasons. *First*, this is an action "to confirm an award made pursuant to . . . an agreement to arbitrate" where the Award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," namely, the New York Convention. *See* 28 U.S.C. § 1605(a)(6); *see also e.g.*, *Stabil LLC v. Russian Fed'n*, 167 F.4th 506, 518 (D.C. Cir. 2026), *petition for certiorari docketed*, No. 25-1093 (U.S. Mar. 17, 2026).

10.      *Second*, by entering into the New York Convention, Argentina waived any immunity it may otherwise possess in relation to an action to enforce an award in this jurisdiction. *See* 28 U.S.C. § 1605(a)(1); *see also Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (holding that "[t]he waiver exception applies" where the United States and the defendant sovereign state "have both signed the [New York] Convention")[3]; *Process & Indus. Devs. Ltd. v. Fed.*

---

[2]    The New York Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought."  Krawiec Ex. D, Art. I(1); *see also* 9 U.S.C. § 201 ("The [New York Convention] shall be enforced in United States courts in accordance with this chapter.").

[3]    The D.C. Circuit has relied on Second Circuit case law to the same effect.  *See Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999) (citing *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572, 578–

*(cont'd)*

3

*Republic of Nigeria*, No. 18-cv-594 (CRC), 2020 WL 7122896, at *1, 6 & n.4 (D.D.C. 2020) ("Nigeria waived its immunity under the FSIA by signing the New York Convention . . . then agreeing to arbitrate in the territory of another Convention signatory."), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022).

11.     Because subject matter jurisdiction exists over Argentina, personal jurisdiction is also established.  *See* 28 U.S.C. § 1330(b).

12.     Venue is proper in this Court because under the FSIA, a civil action may be brought "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."  28 U.S.C. § 1391(f)(4).  Moreover, this Court is the only federal jurisdiction in the United States where venue can lie against a foreign state without demonstrating specific transactional links between that state and the district in question.  *See id.*

## LEGAL STANDARDS

13.     "[C]onfirmation proceedings [pursuant to the New York Convention] are generally summary in nature."  *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 146 (D.D.C. 2018) (citation omitted).  Consistent with the "emphatic federal policy in favor of arbitral dispute resolution . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards," and under the New York Convention, courts "may refuse to enforce [an] award only on the grounds explicitly set forth in Article V [thereof]." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (citations omitted); *see also* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York]

---

79 (2d Cir. 1993) (holding that signatory to New York Convention "implicitly waive[s] any sovereign immunity defense" when it "becomes a signatory to the Convention")).

Convention."). Those defects are extremely limited in nature and apply in extraordinary circumstances. *See* Krawiec Ex. D, Art. V.

## THE UNDERLYING DISPUTE

14. The Award arises from ICS's claims under the BIT concerning Argentina's measures in relation to ICS's investment and, in particular, Argentina's conduct in connection with the Contract between ICS and MECON. The Contract, entered into on March 11, 1998, set forth that ICS would provide auditing services to aid a government program for the pre-shipment inspection of goods to be imported into Argentina (the "Programme"). (Award ¶¶ 48, 60–62.) ICS thus agreed to: (i) audit the pre-shipment inspection of imports into Argentina ("Ordinary Services") by conducting physical inspections at the point of destination of certain shipments covered by the Programme and verifying certain information about the relevant goods (*id*. ¶ 72); and (ii) provide additional non-audit services on an *ad hoc* basis ("Special Services"). (*Id*. ¶¶ 76–77.) The Contract contemplated a 10% cap on ICS's fees incurred with respect to Ordinary Services (the "10% Fee Cap"); to enable ICS to comply with the 10% Fee Cap, the Contract required Argentina to implement a selection system sufficient to identify the shipments to be audited. (*Id*. ¶ 64.) Consistent with the Contract, ICS submitted invoices on a monthly basis for services rendered. (*Id*. ¶ 78.)

15. On August 24, 2001, in purported response to an economic and political crisis, the President of Argentina issued Decree No. 1060/2001, which ordered public bodies and entities to request from suppliers a 13% reduction in the amounts payable for goods or services procured. (*Id*. ¶ 84.)

16. On January 6, 2002, Argentina enacted Law 25.561 (the "Emergency Law"), which, among other matters, authorized the Executive Branch of the Argentine Government to institute a

new currency exchange regime in Argentina.  (*Id*. ¶ 87.)  The Emergency Law repealed the previous policy fixing the foreign exchange rate of one Peso to one U.S. Dollar.  (*Id*.)  These measures effectuated a devaluation of the Peso against the Dollar, causing the value of the Peso to drop to less than one-third of its prior exchange rate.  (*Id*.)

17.    Argentina terminated the Programme in February 2002.  (*Id.* ¶ 89.)  ICS then issued final invoices for services rendered under the Contract and requested that Argentina pay all outstanding invoices.  (*Id*.)  In March 2002, ICS filed an administrative claim with MECON seeking payment of such invoices.  (*Id*. ¶ 90.)  Argentina made a series of demands to ICS requesting that ICS amend or modify the outstanding invoices, and ICS resubmitted some of its invoices.  (*Id.* ¶¶ 91–97.)

18.    In December 2004, with the dispute between the parties still unresolved, ICS filed an amended and expanded administrative claim.  (*Id*. ¶ 98.)

19.    In 2006, Argentina made partial payment of ICS's outstanding invoices.  (*Id*. ¶ 100.) Argentina's payment did not cover all of ICS's outstanding invoices.

20.    In June 2009—with the administrative claim still unresolved (and never to be resolved)—ICS commenced an initial arbitration proceeding (the "Initial Arbitration") pursuant to the arbitration clause contained in Article 8 of the BIT.  (*Id*. ¶ 103; Krawiec Ex. C, Art. 8.)[4]  The Initial Arbitration was commenced under the UNCITRAL Rules, one of the forms of dispute resolution allowed by the BIT.  (Krawiec Ex. C, Art. 8(3)(b).)

21.    In February 2012, the Tribunal in the Initial Arbitration issued a decision concluding that it did not have jurisdiction over the dispute, on grounds that, under Article 8 of the

---

[4]    At all material times, the United Kingdom and Argentina have been parties to the BIT. (Krawiec Ex. C, at 1.)

BIT, ICS needed to pursue litigation of its claims in the Argentine courts for a period of at least 18 months prior to instituting arbitration. (Award ¶ 104.)

22. ICS submitted a dispute to the competent Argentine court in February 2012. (*Id*. ¶ 105.) This claim was never resolved. (*Id*.) Nevertheless, by 2014, more than 18 months had elapsed since the institution of claims in Argentina's home courts, meaning that the precondition to arbitration (as identified by the Tribunal in the Initial Arbitration)[5] was fully satisfied.

23. Accordingly, on July 21, 2014, ICS again commenced an arbitration (the "Subject Arbitration") against Argentina pursuant to Article 8 of the BIT and the UNCITRAL Rules. (*Id.* ¶ 9; Krawiec Ex. C, Art. 8.) Attached hereto as Exhibit G to the Krawiec Declaration is a true and correct copy of ICS's July 21, 2014 Notice of Arbitration.

24. In the Subject Arbitration, ICS claimed that Argentina breached Article 2(2) of the BIT, asserting that Argentina (a) failed to afford ICS's investment fair and equitable treatment; (b) treated ICS's investment in an unreasonable or discriminatory manner; (c) failed to afford ICS's investment full protection and constant security; and (d) failed to observe its obligations in regard to ICS's investment. (Award ¶ 133.) Specifically, ICS claimed that Argentina violated Article 2(2) by: (a) wrongfully withholding payment of amounts exceeding the 10% Fee Cap in connection with Ordinary Services rendered by ICS; (b) unlawfully pesifying certain of ICS's invoices; (c)

---

[5] Other tribunals constituted under the UNCITRAL Rules and the BIT have declined to treat the 18-month litigation requirement as mandatory. *See, e.g.*, *BG Grp. v. Argentine Republic*, 572 U.S. 25, 30, 41–44 (2014) (permitting enforcement of an award issued under the BIT that found the 18-month requirement was "waived" and/or inapplicable, and holding that such a determination was a proper exercise of the UNCITRAL tribunal's power to decide questions of arbitrability). In the present Petition, this issue is moot because—as the Tribunal in the Subject Arbitration observed—Petitioner has duly engaged in litigation in Argentina's home courts for more than 18 months. (Award ¶¶ 104–05.)

unlawfully applying Decree No. 1060/2001 to reduce certain of ICS's invoices by 13%; and (d) failing to compensate ICS for Special Services it rendered to Argentina at its request.  (*Id*. ¶ 132.)

25.    Argentina participated fully in the Subject Arbitration.  It presented evidence, including expert testimony, as well as legal submissions on both jurisdiction and the merits of the dispute.

26.    On July 8, 2019, the Tribunal issued its Award on Jurisdiction (the "Award on Jurisdiction"), in which it rejected each of Argentina's challenges to the Tribunal's jurisdiction over the claims raised by ICS in the Subject Arbitration.  (*Id.* ¶ 7.)

27.    On April 29, 2024, the Tribunal issued the Award in ICS's favor.  (*Id.* ¶ 486.)  The Tribunal held that Argentina had violated Article 2(2) of the BIT, including by failing to observe obligations undertaken in relation to ICS's investment.  (*Id*. ¶ 390; *see also* Krawiec Ex. C, Art. 2(2).)  In reaching that conclusion, the Tribunal determined that: (a) ICS was contractually entitled in accordance with Argentine law to the amounts claimed in excess of the 10% Fee Cap; (b) ICS was entitled under the Contract to invoice for the full U.S. dollar value of its applicable services rendered; (c) ICS was not subject to a 13% reduction in its remuneration for the services provided in the period from July to December 2001, after the Contract had expired; and (d) ICS was entitled to amounts on certain of its alleged "Special Services" invoices.  (Award ¶¶ 258, 272, 280, 389.)  The Tribunal accordingly found that ICS was entitled to damages.  (*Id*. ¶¶ 389–90.)

28.    The Tribunal ordered that Argentina pay ICS damages in the principal amount of USD 9,661,390.80[6], along with interest running from the due date of each invoice of Ordinary or

---

[6]    *See* n.1 *supra* and Krawiec Ex. B (the Tribunal's July 12, 2024 Correction of the Final Award).

Special Services until the date of payment, at the annual rate of 12.8 percent compounded annually. (*Id*. ¶ 486.)

29.    To date, Argentina has failed to satisfy its obligations under the Award.  As of March 31, 2026, the Award amount exceeds $208 million.

30.    On December 4, 2024, Argentina filed a writ of summons in the Dutch courts, seeking annulment of the Award under applicable Dutch arbitration law.  On February 18, 2026, the Dutch Court rendered a judgment rejecting Argentina's annulment petition.[7]

**REQUEST FOR RELIEF: RECOGNITION AND
ENFORCEMENT OF THE ARBITRAL AWARD**

31.    ICS repeats and realleges paragraphs 1 through 30.

32.    Article 8 of the BIT, ratified by Argentina and the United Kingdom, and described herein at paragraph 2 *supra*, constitutes an "agreement in writing" for purposes of Article II of the New York Convention in that it permits arbitration between ICS (as a qualifying investor under the BIT) and Argentina.  (*See* Krawiec Ex. D, Art. II; Krawiec Ex. C, Art. 8.)

33.    The Award was made in The Netherlands, a country that is party to the New York Convention, and which is a country other than the country in which recognition and enforcement is sought hereby.  (*See* Krawiec Ex. E.)

34.    Argentina, the United Kingdom, and the United States each also are parties to the New York Convention.  (*Id.*)

35.    The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

---

[7]    For the avoidance of doubt, the pendency of any proceedings brought by Argentina to annul the Award poses no obstacle to this Court's enforcement thereof, pursuant to this Petition.

9

36. None of the grounds for refusal or deferral of recognition and enforcement of the Award are or should be applicable.

37. No prior application for this or similar relief has been made to this District Court.

38. In the absence of any ground upon which to refuse enforcement, the obligations created by the New York Convention and the FAA require that the Award be recognized and enforced (with pre- and post-Award interest) pursuant to the New York Convention and 9 U.S.C. § 207. As regards interest, the Award specifies the applicable rate of pre- and post-Award interest, and ICS requests judgment be entered in such amounts. In addition, ICS is entitled to post-judgment interest.

WHEREFORE, ICS respectfully requests that, pursuant to Article III of the New York Convention and 9 U.S.C. § 207, this Court:

1. Enter an order recognizing and confirming the Award;

2. Enter judgment for ICS and against Argentina recognizing the Award and entering judgment in an amount equal to the full value of the Award, *i.e.*:

    (i) ordering that Argentina shall pay compensation to ICS in the principal amount of USD 9,661,390.80; and

    (ii) ordering that Argentina shall pay to ICS interest on the amount awarded under sub-paragraph (i) above, running from the due date of each invoice until the date of judgment, at the annual rate of 12.8 percent compounded annually.

3. Enter judgment for ICS and against Argentina, with post-judgment interest to run until the date of payment.

4. Order Argentina to bear the costs of this proceeding.

5. Grant such other relief as the Court may deem just and proper.

DATED: March 31, 2026

By: /s/ *Margaret E. Krawiec*

Margaret E. Krawiec
D.C. Bar Number 490066
Christopher S. Herlihy
D.C. Bar Number 1645234
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 371-7000
Fax: (202) 393-5760
margaret.krawiec@skadden.com
christopher.herlihy@skadden.com

Timothy G. Nelson (*pro hac vice* motion to be filed)
New York Bar Number 3060175
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
timothy.g.nelson@skadden.com

*Attorneys for Petitioner ICS Inspection and Control Services Limited*

11